**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARCUS ARNOLD and
DERICK FREEMAN,

              Plaintiffs,

      vs.

COMMERCIAL FURNITURE
SERVICES, LLC;
JIM MCMENIMEN; and
CRAIG GOOKIN,

             Defendant.

CIV. ACTION NO._____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Marcus Arnold and Derick Freeman (*collectively*, "Plaintiffs"), by and through the undersigned Counsel of Record, and hereby file this Complaint for Damages against Defendants Commercial Furniture Services, LLC, Jim McMenimen, and Craig Gookin, respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

1.

Plaintiffs bring the above-captioned case pursuant to 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid overtime wages and retaliation, as well as the laws of the State of Georgia for breach of contract, intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintains a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II. PARTIES

4.

Plaintiff Marcus Arnold ("Arnold") is a forty-seven (47) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Arnold was an "employee" within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

Plaintiff Derick Freeman ("Freeman") is a forty-six (46) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

7.

At all relevant times, Freeman was an "employee" within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

8.

Defendant Commercial Furniture Services, LLC, ("Commercial Furniture") is a foreign limited liability company providing office furniture installation, asset management, and logistical services affecting inter-state commerce through its facilities in Georgia and Tennessee and subject to the Court's jurisdiction with a principal office located in Knoxville, Tennessee.

9.

Commercial Furniture operates a facility located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071 ("Peachtree Corners Location"), where the conduct forming the basis of the above-captioned complaint occurred.

10.

Commercial Furniture is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

11.

Commercial Furniture may be served with process through Cynthia Jenkins, Registered Agent, 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

12.

Defendant Jim McMenimen ("McMenimen") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

McMenimen is and was, at all relevant times, Commercial Furniture's Owner and Managing Member, involved in the day-to-day operation of Commercial Furniture and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

14.

At all relevant times, McMenimen supervised Plaintiffs and participated in the unlawful and tortious conduct described herein.

15.

McMenimen may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

16.

Defendant Craig Gookin ("Gookin") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

17.

Gookin is and was, at all relevant times, Commercial Furniture's Georgia Field Operations Manager, involved in the day-to-day operation of Commercial Furniture's Peachtree Corners Location, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

18.

At all relevant times, Gookin supervised Plaintiffs and participated in the unlawful and tortious conduct described herein.

19.

Gookin may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

### III.  FACTUAL ALLEGATIONS

20.

Plaintiffs re-allege and incorporate each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

21.

Commercial Furniture is engaged in the business of providing office furniture installation, asset management, and other logistical services related to the onsite creation of workspaces in the Southeast United States from the Peachtree Corners Location.

22.

In 2018, Gookin and McMenimen promised to give Freeman a $3.00 per hour raise in compensation in exchange for Freeman's agreement to transfer from a predecessor company to Commercial Furniture.

23.

Based upon the promises of Gookin and McMenimen to increase Freeman's hourly compensation, Freeman agreed to transfer to Commercial Furniture as a Commercial Installer rather than seek and/or pursue alternative employment opportunities.

24.

Despite Freeman's complaints and inquiries concerning the promised increase in hourly compensation over several months, Defendants never increased Freeman's compensation.   Whenever Freeman inquired about the promised increase in compensation, Gookin would give Freeman the run-around, providing excuses like, "Let me call you back" or "We are trying to get it for you."   Ultimately, Gookin explained that, because business expenses were higher than expected, Defendants would not honor the agreement to increase Freeman's hourly compensation. Although Freeman was forced to continue working at the rate of $17.50 per hour, Commercial Furniture often paid newly-hired Commercial Installers higher hourly rates.

25.

Beginning in or about April 2019, Arnold began working for Commercial Furniture as a Commercial Installer earning $19.50 per hour.

26.

As Commercial Installers, Plaintiffs were responsible for the efficient installation and assembly of office furniture and workspaces at client facilities throughout the region.

27.

During the course of employment with Commercial Furniture, Plaintiffs diligently and professionally performed all duties and assigned tasks.

28.

While employed by Commercial Furniture, Plaintiffs' work schedule varied on a daily basis depending on the needs of Commercial Furniture's clients.  In the evenings no earlier than 6:00PM, Gookin would send Commercial Installers an e-mail with the work schedule for the next day.  However, because Commercial Furniture provides onsite services to clients, Plaintiffs and other Installers were often required to work out-of-town with little or no prior notice.  When travelling to out-of-town to worksites, Defendants required Plaintiffs and the other Installers to arrive at the Peachtree Corners Location at approximately 5:00AM the following day— often only hours after receiving e-mail notice of the need to travel.  Simply put, Plaintiffs' work schedule varied on a daily basis with little advance notice.

29.

Although the hours worked by Commercial Furniture employees were initially recorded on timesheets, during the course of Plaintiffs' employment, Commercial Furniture began requiring employees to clock-in and clock-out using an electronic system.

30.

Although Plaintiffs often individually worked up to (and exceeding) eighty (80) hours in certain workweeks as Commercial Installers, Commercial Furniture refused to pay Plaintiffs overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

31.

Because Commercial Furniture failed and refused to compensate at the FLSA-mandated rate, Plaintiffs repeatedly complained to Gookin and other Commercial Furniture employees.  In fact, on several occasions, Arnold complained to Gookin about Commercial Furniture's failure to compensate at the FLSA-mandated rate. Although Gookin often responded to Arnold's complaints by stated, "We're working on it," Commercial Furniture never compensated Plaintiffs at the FLSA-mandated rate for hours worked in excess to forty (40) hours in certain workweeks.  Moreover, in response to one of Arnold's complaints about the failure to compensate at the FLSA-mandated rate in or about May 2020, Gookin responded, "If you don't like it, leave."

32.

Due to Defendants' erratic and draconian scheduling practices and procedures, Plaintiffs suffered extreme and severe distress as it became increasingly difficult for Plaintiffs to continue performing diligently and professionally while maintaining their personal and familial obligations.

33.

At approximately 3:00PM on one occasion in or about May 2020 while Arnold was working for Commercial Furniture in Fort Benning, Georgia, Arnold's co-worker, Chris, advised Arnold that Gookin wanted Arnold to return to Atlanta. As such, Arnold immediately returned to Atlanta, where a co-worker advised Arnold that Gookin said, "never mind." After Arnold inquired about not being scheduled for work when returning to Atlanta, Gookin then chastised and reprimanded Arnold for returning to Atlanta pursuant to the instructions conveyed to Arnold.

34.

Because of childcare and other personal responsibilities, Plaintiffs repeatedly complained about the last-minute notice concerning out-of-town assignments. Specifically, Arnold would complain, "I have kids. I need to have more notice than that." Rather that provide additional notice or afford any other remedial action, Gookin continued to the practice of eleventh-hour out-of-town assignments.

35.

On another Sunday night in or about May 2020, Gookin scheduled Arnold for work on the following day, Monday.  Because Arnold was responsible for childcare, Arnold advised Gookin that Arnold could not report to work on such short notice. Since that time, Gookin generally refused to communicate with Arnold even regarding or concerning professional matters.

36.

Whenever Plaintiffs professionally complained about scheduling or unpaid wages, Gookin created a tense and stressful workplace environment.  For example, Gookin would shut down, cease communicating with Plaintiffs, and isolate/separate Plaintiffs for weeks.  Even worse, Gookin would summarily and punitively remove Plaintiffs from Commercial Furniture's work schedule, resulting in the loss of income.

37.

On or about January 17, 2020, Arnold contacted an attorney to discuss legal remedies associated with Defendants' failure to pay FLSA-mandated overtime wages, the extreme/severe stress caused by Defendants' scheduling practices, and Defendants unlawful and unfair employment practices.

38.

Following communication with legal counsel, Arnold gave legal counsel's contact information co-workers, including Freeman.  Approximately three (3) weeks later, Defendants completely removed Arnold from the work schedule.  Since that time, Defendants have not scheduled Arnold to work as a Commercial Installer.

39.

Similarly, following the communication with counsel, Defendants placed Freeman on what Commercial Furniture employees described as "Shit Detail."  To that end, Defendants sent Freeman to distant, in-town worksites without any assistance or co-workers.  Because Freeman was not compensated for the travel time and costs, these assignments reduced Freeman's compensation.  Moreover, Defendants sent Freeman to unpleasant worksites with difficult clients and assignments.  Succumbing to the stress and difficulties associated with these assignments, on or about May 15, 2020, Freeman was forced to resign from Commercial Furniture.

40.

While Plaintiffs worked as Commercial Installers, Commercial Furniture required, and was aware that, Plaintiffs worked more than forty (40) hours per workweek.

41.

Rather than compensate Plaintiffs at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Plaintiffs at their regular straight-time rates for hours worked in excess of forty (40) ours in each workweek.

42.

Commercial Furniture's failure to properly compensate Plaintiffs at the FLSA-mandated rate was knowing and willful.

43.

Commercial Furniture has an account with United Parcel Service ("UPS"), requiring the maintenance of Installers at UPS facilities.   In 2019 while invoicing/billing UPS at the FLSA-mandated rate for hours worked in excess of forty (40) hours during workweeks by the Installers, Warren and Greg, Commercial Furniture failed to compensate the Installers at the FLSA-mandated rate.   After learning of the failure to compensate the Installers at the FLSA-mandated rate, UPS threatened to, among other things, terminate the account before Commercial Furniture agreed to take remedial action, including, but not limited to, back-pay at the FLSA-mandated rate to the Installers.   Angered, Gookin and McMenimen cursed at the Installers for disclosing the unlawful employment practices.

## IV.  CLAIMS FOR RELIEF

## COUNT I:
## FAILURE TO PAY MANDATED WAGES
## IN VIOLATION OF THE FLSA
**(Against Defendant Commercial Furniture)**

44.

Plaintiffs re-allege and incorporate, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

45.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

46.

During the relevant period, Plaintiffs were employees of Commercial Furniture within the meaning of the FLSA, 29 U.S.C. § 203.

47.

During the relevant period, the relationship between Plaintiffs and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

48.

During the relevant time period, Plaintiffs regularly worked more than forty (40) hours per workweek and, therefore, Plaintiffs were entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

49.

However, during the course of Plaintiffs' employment, Commercial Furniture failed to compensate Plaintiffs for the hours worked in excess of forty (40) hours per workweek.

50.

Commercial Furniture knew, or showed reckless disregard for the fact, that Commercial Furniture failed to pay Plaintiffs' overtime compensation in violation of the FLSA.

51.

Commercial Furniture's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Plaintiffs at the mandated overtime rate.

52.

Commercial Furniture's conduct in violation of the FLSA was both willful and in bad faith.

53.

As the direct and proximate result of Commercial Furniture's intentional, willful, and unlawful conduct when refusing to pay Plaintiffs overtime compensation for the overtime hours worked, Plaintiffs have suffered loss of income and other damages.

54.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiffs are entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE FLSA
### (Against All Defendants)

55.

Plaintiffs re-allege and incorporate by reference each of the foregoing Paragraphs as if fully restated herein.

56.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

57.

During the relevant period, the relationship between Plaintiffs and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Plaintiffs by Defendants.

58.

Defendants unlawfully and knowingly failed to pay the FLSA-mandated rates to Plaintiffs for hours worked in excess of forty (40) hours during certain workweeks.

59.

Plaintiffs repeatedly complained to Commercial Furniture employees, including, but not limited to, Gookin, about unlawful employment practices in violation of the FLSA.

60.

When Defendants failed to remedy Plaintiffs' complaints about, *inter alia*, the failure to compensate pursuant to the FLSA, Plaintiffs sought legal representation to remedy the FLSA violations.

61.

Following Plaintiffs' complaints concerning unlawful employment practices and communications with legal counsel concerning FLSA remedies, Defendants took adverse employment actions against Plaintiffs, including, but not limited to, ceasing professional communications, isolating Plaintiffs from colleagues and co-workers, reducing compensation, removing Plaintiffs from the work schedule, assigning Freeman to what Commercial Furniture employees called a "Shit Detail," and terminating Plaintiffs' employment without cause in violation of, *inter alia*, the FLSA.

62.

The effect of Defendants' actions has been to suspend and deprive Plaintiffs of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Plaintiffs because of the exercise of Plaintiff's Federally-protected rights

63.

Defendants' adverse employment actions against Plaintiffs constitute unlawful retaliation in violation of, *inter alia*, the FLSA.

64.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless and wanton disregard of the harm caused to Plaintiffs in derogation of Plaintiffs' Federally-protected rights.

65.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

66.

The retaliation to which Plaintiffs were subjected by Defendants entitles Plaintiffs to all appropriate relief afforded under the law.

67.

As a result of Defendants' intentional and unlawful conduct, Plaintiffs have suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

68.

Defendants' actions with respect to Plaintiffs have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Plaintiffs are entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT III
## BREACH OF CONTRACT
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
**(Plaintiff Freeman Against All Defendants)**

69.

Plaintiff Freeman re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

70.

Defendants and Freeman entered into an agreement and/or contract, wherein Defendants agreed to increase Freeman's hourly compensation by $3.00 per hour if Freeman agreed to transfer to Commercial Furniture from a predecessor company.

71.

The Parties' agreement and/or contract, which is supported by good and valuable consideration, constitutes Defendants' unconditional promise to increase Freeman's compensation in exchange for Freeman's continued employment.

72.

Based upon Defendants' promises and the Parties' agreement, Freeman transferred to Commercial Furniture while forgoing alternative employment opportunities.

73.

When transferring to, and continuing employment with, Commercial Furniture, Freeman performed pursuant to the terms and conditions of the Parties' agreement.

74.

Notwithstanding Freeman's several demands over multiple months, Defendants breached the agreement when refusing and/or failing to increase Freeman's hourly rate of compensation.

75.

As a direct and proximate result of Defendants' breach of the agreement, Freeman has been damaged in the amount of the total increase in compensation, interest, and litigation expenses associated with the collection of the admitted indebtedness.

76.

Because Defendants have acted in bad faith, been stubbornly litigious, and/or caused Freeman unnecessary trouble and expense when breaching the Parties' agreement, Freeman is also entitled to recover the expenses of litigation associated with Defendants' breach of contract.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against All Defendants)

77.

Plaintiffs re-allege and incorporate, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

78.

Defendants' statements, conduct, and behavior towards Plaintiffs were intentional and reckless, extreme and outrageous, causing Plaintiffs severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

79.

Defendants' statements, conduct, and behavior towards Plaintiffs demonstrate, among other things, a "retaliatory animus."

80.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Plaintiffs, as well as Plaintiffs' income and/or livelihood while Plaintiffs were caring for children.

81.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Plaintiffs, Defendants knew that Plaintiffs were caring for children and dependent upon the income received from Commercial Furniture.

82.

Defendants tricked Freeman into continuing employment with Commercial Furniture, engaged in erratic and draconian scheduling practices that were known to cause severe distress, ignored Plaintiffs' reasonable requests for relief, subjected Plaintiffs to unsavory and less-desirable worksites, reduced Plaintiffs' compensation and terminated employment when Plaintiffs' sought legal remedies related to Defendants' unlawful employment practices, and engaged in other unfair and unlawful treatment.

83.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Plaintiffs.

84.

As a result of Defendants' conduct, Plaintiffs have and will continue to suffer severe emotional distress and other damages for which Plaintiffs are entitled to recover.

**COUNT V**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF THE LAW OF THE STATE OF GEORGIA**
**(Against Defendants Commercial Furniture and McMenimen)**

85.

Plaintiffs re-allege and incorporate, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

86.

As a result of the actions taken by Defendants Commercial Furniture and McMenimen, Plaintiffs suffered, among other things, unpaid wages, retaliation, and severe emotional distress.

87.

Defendants Commercial Furniture and McMenimen owed Plaintiffs a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in unlawful or tortious conduct.

88.

By negligently retaining and supervising its employees, including Gookin, Defendants Commercial Furniture and McMenimen breached their duty to hire, retain, and supervise employees who would lawfully behave.

89.

Defendants Commercial Furniture and McMenimen knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including Gookin, to engage in unlawful conduct against Plaintiffs.

90.

By failing to engage in any corrective or remedial action, Defendants Commercial Furniture and McMenimen ratified, condoned, and/or adopted its employees' unlawful conduct.

91.

As a direct and proximate result of Defendants Commercial Furniture's and McMenimen's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including Gookin, Plaintiffs suffered damages.

92.

Defendants Commercial Furniture's and McMenimen's negligent conduct entitles Plaintiff to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiffs' rights under, among other laws, the FLSA were violated;

(c)     That the Court award Plaintiffs compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendant's willful violations of the FLSA;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

Respectfully submitted, this 5th day of August, 2020.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiffs Marcus Arnold and Derick Freeman*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| MARCUS ARNOLD and DERICK FREEMAN, | |
| Plaintiffs, | |
| vs. | CIV. ACTION NO._____ |
| COMMERCIAL FURNITURE SERVICES, LLC; JIM MCMENIMEN; and CRAIG GOOKIN, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 5th day of August, 2020.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406