## CONFIDENTIAL

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made this by Marcus Arnold, Derick Freeman, and Victor Coleman (collectively "Plaintiffs"), on the one hand, and Commercial Furniture Services, LLC ("CFS"), Jim McMenimen, and Craig Gookin (collectively "Defendants"), on the other. The Plaintiffs and Defendants are referred to collectively herein as the "Parties."

**WHEREAS**, on August 5, 2020, Plaintiffs filed a civil lawsuit in the United States District Court for Northern District of Georgia, Atlanta Division, captioned *Marcus Arnold et al. v. Commercial Furniture Services, et al.*, and docketed as Case No. 1:20-cv-03252-WMR (the "Litigation"),[1] alleging that Defendants, among other things, violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiffs in accordance with the FLSA;

**WHEREAS**, Defendants have denied and continue to deny that it violated any federal, state or local laws, breached any duty, breached any contractual obligation, failed to pay any employees as required by the FLSA, engaged in any misclassification, misrepresentation, retaliation, or other unlawful conduct with respect to any of the Plaintiffs, including, but not limited to, the allegations that Plaintiffs raised, or could have raised, in the Litigation;

**WHEREAS**, Plaintiffs' counsel has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiffs, and, recognizing the significant risks of continued litigation, including the possibility that Plaintiffs otherwise may not recover anything or may recover an amount less than provided for in this Agreement, Plaintiffs' counsel has concluded that the terms and conditions of this Agreement are reasonable and fair and the Agreement is in Plaintiffs' best interest;

---

[1] Originally, Arnold and Freeman filed one lawsuit together, which bares this case number. But Victor Coleman filed his own lawsuit separately, on December 30, 2020, originally styled as *Victor L. Coleman v. Commercial Furniture Services, LLC, et al.*, Case No. 1:20-cv-05279-SDG. Coleman's case was consolidated with Arnold and Freeman's, under their case number (Case No. 1:20-cv-03252-WMR) on March 4, 2021, and it is under this current posture that all Plaintiffs enter into this Agreement.

**NOW THEREFORE**, in consideration of the monies, mutual promises, and mutual covenants contained herein, the Parties agree as follows:

1.    **Payments and Other Consideration.** In consideration for the promises by Plaintiffs in this Agreement, Defendants agree to pay the total gross sum of Sixty-Three Thousand and 00/100 Dollars ($63,000) which shall be paid as follows:

   **(a)**    One check made payable to "Marcus Arnold" in the gross amount of One Thousand Seven Hundred Fifty and 13/100 Dollars] ($1,750.13), less lawful withholdings, for alleged wage damages, to be reported on an IRS Form W-2;

   **(b)**    One check made payable to "Marcus Arnold" in the gross amount of Twelve Thousand Forty-Nine and 87/100 Dollars ($12,049.87) for alleged liquidated damages and interest, to be reported on an IRS Form 1099;

   **(c)**    One check made payable to "Derick Freeman" in the gross amount of Two Thousand Nine Hundred One and 61/100 Dollars ($2,901.61), less lawful withholdings, for alleged wage damages, to be reported on an IRS Form W-2;

   **(d)**    One check made payable to "Derrick Freeman" in the gross amount of Fifteen Thousand Ninety-Eight and 39/100 Dollars ($15,098.39) for alleged liquidated damages and interest, to be reported on an IRS Form 1099;

   **(e)**    One check made payable to "Victor Coleman" in the gross amount of Five Thousand Eight Hundred Seventeen and 87/100 Dollars ($5,817.87), less lawful withholdings, for alleged wage damages, to be reported on an IRS Form W-2;

   **(f)**    One check made payable to "Victor Coleman" in the gross amount of One Hundred Eighty-Two and 13/100 Dollars ($182.13) for alleged liquidated damages and interest, to be reported on an IRS Form 1099;

   **(g)**    One check payable to the "Molden & Associates" in the amount of Twenty-Five Thousand Two Hundred and 00/100 Dollars ($25,200), for attorney's fees and costs. This payment shall cover all claims for attorney's

fees and costs by Plaintiffs in the Litigation. Defendants will issue an IRS Form 1099 to the Molden & Associates for this payment.

Plaintiffs agree that the payments referenced in this Paragraph 1 constitute adequate consideration for the release of claims by Plaintiffs in this Agreement, and that the payments are in full and complete satisfaction of any and all claims by them against Defendants and for any and all attorney's fees and/or costs with respect to the Litigation or any other related matters. The payments referenced in this Paragraph 1 are expressly conditioned upon and subject to Plaintiffs' compliance in good faith at all times with all terms of this Agreement.

2.      **Timing of Payments and Stipulation of Dismissal.** The payments referenced in Paragraph 1 of this Agreement shall be delivered to Plaintiffs' counsel within 7 business days after the latest to occur of the following: (a) Plaintiffs' counsel delivers to Defendants' counsel the executed, properly notarized original signature of Plaintiffs on this Agreement; (b) Defendants' counsel's receipt of current IRS Forms W-4 and W-9 bearing Plaintiffs' original signatures; (c) Defendant's counsel's receipt of a current IRS Form W-9 bearing an original signature for Plaintiffs' counsel; and (d) Defendants' counsel's receipt of a Stipulation of Dismissal With Prejudice in the form attached hereto as **Exhibit A**, executed by Plaintiffs' counsel and entered as "So Ordered" by the Court or the Court's final dismissal of the Litigation with prejudice.

3.      **Taxes.** Plaintiffs acknowledge and agree that Defendants have made no representations with respect to the tax consequences of the payments set forth in Paragraph 1 of this Agreement. Except as otherwise set forth in this Agreement, Plaintiffs expressly agree, as a condition of Defendants' performance of its obligations under this Agreement, that they will assume all responsibility for, and shall protect, indemnify, defend and hold harmless, Defendants from and against, any and all claims, losses, damages, expenses, including but not limited to attorney's fees, costs, disbursements, interest, penalties, litigation expenses and costs of collection, resulting from any liability or claim of liability for any amounts assessed by or due to any federal, state or local government or agency thereof in any jurisdiction.

4.      **No Other Payments or Benefits.** Except as set forth in Paragraph 1 of this Agreement, Plaintiffs are not entitled to any other payments, compensation, wages, benefits, reimbursements or distributions from Defendants or any Releasees (as defined in this Agreement) under this Agreement, under any prior agreement, express or implied, written or unwritten, or otherwise. References in this

Agreement to the release of claims by Plaintiffs against Defendants and the other
Releasees shall be deemed to also include, without limitation, the release of claims
against Defendants and the Releasees regarding all contractual payments,
compensation, commissions, wages, benefits, back pay, interest, statutory
payments and penalties, bonuses, damages, vacation, sick leave, paid time off,
medical, dental, optical or hospitalization benefits, accidental death and
dismemberment coverage, long-term disability coverage, flexible spending plans,
stock options, loyalty stock, pensions, 401(k) plan or other retirement benefits of
any kind, education benefits, automobile usage benefits, life insurance benefits,
overtime, sick pay, severance pay, travel expenses, out-of-pocket reimbursements,
any other form of compensation, and attorney's fees and costs arising out of,
related to, or derivative from Plaintiffs' alleged employment with Defendant.

    **5.**    **Plaintiffs' Release.** In exchange for the promises and agreements
contained herein and the payments described above, Plaintiffs, on behalf of
themselves and their legal representatives, heirs, assigns and executors, hereby
irrevocably and unconditionally forever release Defendants and any of CFS'
affiliates, predecessors, successors, assigns, parents, subsidiaries, its employee
benefit plans, and each of their respective past, present and future employees,
independent contractors, officers, directors, agents, insurers, attorneys, fiduciaries,
advisors, direct and indirect members, partners, shareholders and representatives
(collectively, the "Releasees") from any and all charges, complaints, claims,
grievances, liabilities, obligations, promises, agreements, controversies, damages,
disability benefits, medical and hospital expenses, actions, causes of action, suits,
rights, demands, costs, losses, debits and expenses of any nature whatsoever,
whether known or unknown, suspected or unsuspected, vested or contingent, and
whether concealed or hidden, which Plaintiffs now have, ever had or ever will have
against the Releasees by reason of any and all acts, omissions, events, transactions,
circumstances or facts existing or occurring up to the date hereof, including, but
not limited to, claims related to compensation, pay, payments, proceeds, cash flow,
residuals, capital gains, commissions, hours, bonuses, pension, disability, stock
options, 401(k) benefits of any kind, physical or mental affliction, benefits
including vacation days and payment for unused vacation, paid sick leave, terms
and conditions of employment, attorney fees or costs, and claims of retaliation,
harassment or discrimination on account of age, race, color, sex, sexual orientation,
marital status, disability, handicap, national origin, citizenship, veteran status and
religion, including any and all claims arising under the following statutes and laws,
including any amendments thereto:  Fair Labor Standards Act, Title VII of the
1964 Civil Rights Act, Section 1981 of the Civil Rights Act of 1866, the Civil
Rights Act of 1991, the Equal Pay Act, the Americans With Disabilities Act, the

Age Discrimination in Employment Act of 1967, the Employee Retirement Income Security Act of 1974, the Immigration Reform and Control Act, the National Labor Relations Act, the Fair Labor Standards Act, the Occupational Safety and Health Act, the Lilly Ledbetter Fair Pay Act, the Sarbanes-Oxley Act, the Family and Medical Leave Act, as well as any other similar state and local employment or wage payment laws. This release also specifically includes any claims that could have been brought under the laws of any country, as well as any United States federal, state, or local statute (whether or not specifically listed above), ordinance, regulation, code, rule, order or public policy, contract, implied contract, misrepresentation, promissory estoppel, unjust enrichment, or other tort or common law. Further, through this Agreement, Plaintiffs specifically release the Releasees from all claims arising out of or related to any employee handbooks, personnel manuals, or employment policies. The Parties specifically agree that this release is intended to be as broad in scope as possible under all applicable laws, and that it specifically includes the release of all claims arising out of or related in any way to Plaintiffs' alleged employment with CFS, including, without limitation, all claims by Plaintiffs arising out of or related to the Litigation. This release does not include any claims that plaintiffs cannot release under controlling law, such as claims for unemployment benefits, and does not affect any action to enforce this Agreement.

6.    **Covenant Not to Sue.** Plaintiffs hereby represent that other than the Litigation, they have not filed any local, state or federal lawsuits against Defendants and will not file any local, state or federal lawsuits against Defendants for any claims existing as of the date on which they execute this Agreement. Except as set forth in this Agreement, Plaintiffs represent that they have not filed any formal or informal complaints, charges, and/or claims arising out of or related to Plaintiffs' alleged employment with CFS, or the termination thereof. Plaintiffs do not waive their right to file an administrative charge with the Equal Employment Opportunity Commission or any other employment and government agencies, but Plaintiffs agree that they will never accept or receive any compensation for any such administrative claim(s) beyond the compensation that they receive pursuant to this Agreement. The Parties acknowledge and agree that the covenants in this paragraph are essential and material parts of this Agreement and that without their inclusion, this Agreement would not have been reached by the Parties. This paragraph does not preclude any party from filing a future action against any other party for breach of this Agreement. Plaintiffs represent that, to the best of their knowledge and belief, they are not presently a putative or actual member of any class, collective or other action against any of the Releasees other than the instant Litigation. Further, in the event that Plaintiffs receives notice in the

future that they have been identified as a putative or actual member of any class, collective or other action against any of the Releasees, they agree to promptly take all steps necessary to effectuate their dismissal with prejudice, and Plaintiffs shall not accept compensation of any kind from Defendants in any such action.

7.    **Withdrawal of Litigation.** Plaintiffs agree to withdraw with prejudice, in its entirety, the Litigation and execute, either themselves or through their counsel, any and all documents required by the United States District Court for the Northern District of Georgia, Atlanta Division to effectuate that withdrawal, including, without limitation, the Stipulation of Dismissal with Prejudice attached as **Exhibit A**.

8.    **No Admissions of Liability and Non-Admissibility.** By entering into this Agreement, Defendants do not admit, and specifically deny, any liability or wrongdoing. Plaintiffs expressly understand and agree that Defendants expressly deny that they violated the FLSA, retaliated against the Plaintiffs, misclassified Plaintiffs as independent contractors, or breached any duties, contract or otherwise, owed to Plaintiffs, and that Defendants are entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all matters in controversy, disputes and causes of action brought by Plaintiffs against Defendants. Accordingly, this Agreement does not constitute an admission by Defendants or by any Releasee of any violation of any federal, state or local statute. Further, this Agreement does not constitute an admission by Defendants or by any Releasee of any violation of any contract or common law or any other legal duty. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendants or any Releasee.

9.    **Conditions Precedent and Other Steps.** This Agreement is contingent upon and requires court approval of all settlement terms. The Parties agree to take all steps reasonably necessary to effectuate court approval of this Agreement, and to execute such documents and to take such other actions as may be reasonably necessary to further the purposes of this Agreement.

10.    **Confidential / Proprietary Information and Non-Disclosure.**

(a)    Plaintiffs agree that they will not use, disclose, or cause to be disclosed in any way, directly or indirectly, any of the CFS' trade secrets, confidential, or proprietary information, or documents including, without limitation, information and documents relating to the CFS' business and

6

operations; customers, clients, and vendors; technology, finances, and innovations; business, sales, promotion, pricing, and marketing plans; processes, techniques, and strategies; and products, services, independent contractors, and employees, except as may be required by law or other compulsory disclosure process.

**(b)** Plaintiffs agree that this Agreement, as well as the nature and terms of this settlement and the subject matter thereof, will be forever treated as confidential and that Plaintiffs shall make no disclosure or reference to the terms of this Agreement to any person or entity, except to Plaintiffs' attorneys, members of Plaintiffs' immediate families and, as necessary, tax preparers, provided that each such person agrees to be bound by the confidential nature of this Agreement. Plaintiffs and Plaintiffs' counsel may also make such disclosures pursuant to court or administrative order, subpoena, or as otherwise may be required by law. Plaintiffs acknowledge and agree that Plaintiffs' promise to maintain the confidentiality of the Agreement is an important element of the consideration for and inducement of CFS to enter into this Agreement. Plaintiffs further agree that Plaintiffs' breach of this Agreement's confidentiality clause constitutes irreparable harm to the CFS. In the event of an actual or threatened confidentiality breach, Plaintiffs consents to a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting commission or continuation of any actual or threatened breach. Nothing in this Agreement shall preclude Plaintiffs from stating, in response to any inquiry, that this dispute has been resolved by mutual agreement and to the mutual satisfaction of the Parties, but it is expressly agreed that Plaintiffs shall make no further comment.

**(c)     Protected Rights.** Nothing contained in this Agreement limits the Plaintiffs' ability to file a charge or complaint with the Equal Employment Opportunity Commission (EEOC), the National Labor Relations Board (NLRB), the Occupational Safety and Health Administration (OSHA), the Securities and Exchange Commission (SEC), the Department of Labor (DOL), or any other federal, state, or local governmental agency or commission (Government Agencies). Plaintiffs further understand that this Agreement does not limit their ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice

to the Company. This Agreement does not limit Plaintiffs' right to receive an award for information provided to any Government Agencies.

      **(d)    Defend Trade Secrets Act.** Plaintiffs are advised that pursuant to the Defend Trade Secrets Act an individual will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Further, Plaintiffs understand that in the event that disclosure of CFS' trade secrets was not done in good faith pursuant to the above, Plaintiffs, collectively or individually, as the situation may be, will be subject to substantial damages, including punitive damages and attorney's fees.

      **11.    Non-Disparagement.** Plaintiffs agree that they will not, directly or indirectly, make untrue or defamatory statements about Defendants or any of CFS' past, present and future employees, independent contractors, owners, officers, directors, attorneys or agents, or their families, partners and representatives, to any other person or business entity. Nothing in this paragraph or in any other provision of this Agreement is intended to or shall be interpreted to limit any of the Plaintiffs' duty to testify truthfully under oath in any proceedings in which such person may testify, or their right to communicate with any governmental agencies.

      **12.    Consideration and Revocation Period.** Plaintiffs have 21 days from the date they receive this Agreement to review and decide whether to sign it. If Plaintiffs choose, they may sign the Agreement before the 21-day period ends. Once Plaintiffs sign this Agreement, Plaintiffs have seven (7) days to revoke it. This Agreement shall not become affective and enforceable until the date upon which the revocation period expires (the "Effective Date"). Plaintiffs may do so by delivering written notice of revocation within the seven-day revocation period to Defendant's counsel via email at swright@stephanwright.com. If Plaintiffs revoke this Agreement, it will be null and void in all respects. Plaintiffs are further advised to consult with their attorney before signing this Agreement.

      **13.    Remedies.** In the event of any breach of this Agreement, the Parties reserve all remedies they may have in law or equity, including, without limitation, injunctive relief in accordance with applicable law for any breach (or anticipated breach) of this Agreement.

**14.**    **Severability.** Each provision of this Agreement is severable and, if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

**15.**    **Notices.** All notices required under this Agreement shall be delivered to each party's attorneys of record, who are listed in the Stipulation of Dismissal attached hereto as **Exhibit A.**

**16.**    **No Interpretation of Ambiguity Against the Drafter.** This Agreement has been negotiated and prepared by both Parties and their counsel. If any of the Agreement's provisions require a court's interpretation, no ambiguity found in this agreement shall be construed against the drafter.

**17.**    **Third Party Beneficiaries.** Each of the Releasees is an intended third party beneficiary of this Agreement.

**18.**    **Authority.** By their signature below, the individuals signing the Agreement represent and warrant that they have actual authority to execute this Agreement, that they have read and understand the terms of this Agreement, and that they are entering into this Agreement knowingly, voluntarily and without any coercion or duress.

**19.**    **Ownership of the Released Claims.** In consideration for the payments to Plaintiffs and their counsel referenced in Paragraph 1 of this Agreement, and for Plaintiffs' executing this Agreement, and as an express condition of this Agreement, Plaintiffs hereby represents and warrants that, up through and including the date on which this Agreement has been fully executed by the Parties, they are the sole owner of the claims that they are releasing pursuant to this Agreement and that they have not assigned or transferred, and will not assign or transfer: (a) any claims against Defendants or any Releasees, or (b) any rights that they have or may have to the aforementioned payments.

**20.**    **Governing Law.** This Agreement shall be governed by, construed and enforced under the laws of the Georgia (without regard to conflict of laws principles).

**21.** **Headings.** The headings used for the Paragraphs of this Agreement are solely for the convenience of the Parties and shall not have any other independent meaning or significance.

**22.** **Counterparts.** This Agreement may be executed in any number of duplicate originals, photocopies, or facsimiles, all of which (once each party has executed at least one such duplicate original, photocopy, or facsimile) will constitute one and the same document.

**23.** **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties regarding the subject matter hereof and supersedes any written or oral understanding, promise, or agreement directly or indirectly related to them. Plaintiffs acknowledge that they are legally competent to execute this Agreement and accept full responsibility for this Agreement. This Agreement shall be final and binding upon the Parties, their predecessors, successors, and assigns, as to all past or present disputes referred to herein which may have existed or now exist between them. Any amendments or changes to this Agreement are unenforceable unless they are made in a writing signed by Plaintiffs and the Chief Executive Officer of Defendant.

**BY SIGNING THIS AGREEMENT, PLAINTIFFS ACKNOWLEDGE THAT THEY HAVE READ IT, UNDERSTAND EACH PROVISION IN IT, AND KNOW THAT THEY ARE GIVING UP IMPORTANT LEGAL RIGHTS. PLAINTIFFS AGREE WITH AND ACCEPT EVERYTHING IN THIS AGREEMENT, ARE AWARE OF THEIR RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING IT, AND, BY SIGNING BELOW, KNOWINGLY AND VOLUNTARILY ENTER INTO THIS AGREEMENT.**

~ Signatures on following page ~

**PLAINTIFFS**

**MARCUS ARNOLD**

Date: 5 - 6 - 2021

_____

**DERICK FREEMAN**

Date: _____

_____

**VICTOR COLEMAN**

Date: _____

**DEFENDANTS**

**COMMERCIAL FURNITURE SERVICES, LLC**

By: _____

Printed Name: Jim McMenimen

Title: Managing Partner

Date: 5 - 13 - 21

_____
**JIM MCMENIMEN**

Date: 5-13-21

_____
**CRAIG COOKIN**

Date: 5 / 13 / 21

11

**PLAINTIFFS**

_____

**MARCUS ARNOLD**

Date: _____

_Derick Freeman_
**DERICK FREEMAN**

Date: 5 - 5 - 2021

_____

**VICTOR COLEMAN**

Date: _____

**DEFENDANTS**

**COMMERCIAL FURNITURE SERVICES, LLC**

By: _____

Printed Name: _Tim McMenimen_

Title: _Managing Partner_

Date: 5-13-21

**JIM MCMENIMEN**

Date: 5-13-21

**CRAIG GOOKIN**

Date: 5/13/21

11

**PLAINTIFFS**

**MARCUS ARNOLD**

Date: _____

**DERRICK FREEMAN**

Date: _____

*[signature]*
**VICTOR COLEMAN**

Date: 5/5/2021

**DEFENDANTS**

**COMMERCIAL FURNITURE SERVICES, LLC**

By *[signature]*

Printed Name: Jim McMenimen

Title: Managing Partner

Date: 5-13-21

*[signature]*
**JIM MCMENIMEN**

Date: 5-13-21

*[signature]*
**CRAIG GOOKIN**

Date: 5/13/21